UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HERIBERTO SOTO,

                              Petitioner,                      DECISION AND ORDER

-vs-

                                                                     18-CV-6003 (CJS)

THOMAS GRIFFIN, Superintendent,

                              Respondent.

_____

      *Pro se* petitioner Heriberto Soto ("Soto") filed the instant petition for a writ of habeas corpus to challenge his conviction after a jury trial in the New York Supreme Court, Monroe County for predatory sexual assault against a child. Pet., Jan. 2, 2018, ECF No. 1. He maintains that the state prosecutor and the trial court violated his constitutional rights, and that he received ineffective assistance of trial counsel. Respondent Thomas Griffin opposes the petition. Mem. in Opp., May 2, 2018, ECF No. 13. For the reasons discussed below, Soto's petition [ECF No. 1] is denied. The Clerk of Court is directed to close this case.

## LEGAL STANDARD

      Soto brings his habeas corpus petition pursuant to 28 U.S.C. § 2254. The general legal principles applicable to such a claim are well-settled. Federal courts are obliged to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214). "First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). "Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 82–84 (1977)). For claims adjudicated on the merits in state court, a federal court may issue a writ of habeas corpus only when the state-court adjudication "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Chrysler*, 806 F.3d at 117 (quoting 28 U.S.C. § 2254(d)(1)).

A principle is "clearly established Federal law" for § 2254 purposes when it is embodied in a holding of the United States Supreme Court, framed at the appropriate level of generality. *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)). A state court decision is "contrary to" such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Washington*, 876 F.3d at 403 (citation omitted).

## DISCUSSION

Soto's habeas application challenges several procedural rulings the trial court made during the course of the proceedings and the conduct of the prosecutor on summation, and argues that he received the ineffective assistance of counsel. Because Soto is proceeding *pro se*, the Court has construed his papers liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). For ease of discussion, the Court will address Soto's arguments out of the order in which he presented them.

<u>The Trial Court's *In Camera Review* and Subsequent Preclusion of Evidence</u>

*Background*

It is undisputed that at the time of his offense in 2008, Soto was staying with his girlfriend, Juanita, and their two children in a room Juanita rented in the house of her friend, Sonja. Also living

2

in the house were Sonja, a single mother of several children, and Sonja's family, including the victim. The victim was eight years old at the time of the offense, and ten years old at the time of trial.

At a pretrial conference on April 30, 2010, defense counsel informed the trial court of the following:

> I confirmed with [the prosecution] this morning there have been two other individuals who were also residents of the household who also had been charged with similar acts. One of them has pled guilty and been sentenced . . . . I'm going to be putting together a specific request, that [the government] produce materials relative to those cases.

State R., Trial Ct. ("TR"), 27:5–12,[1] May 7, 2018, ECF No. 14-1. Soon thereafter, the trial court issued a written decision which indicated that the court had conducted an *in camera* review of the materials the defense requested regarding the "other individuals . . . charged with similar acts" in the victim's household, and found that the materials were not relevant to the issues before the trial court in Soto's case. State R., Appellate Court ("AR"), 134, May 7, 2018, ECF No. 14.

Prior to completing his cross-examination of the victim at trial, and outside of the presence of the jury, defense counsel again raised the issue of the other offenses against the victim:

> [DEFENSE COUNSEL:] . . . [B]efore I continue further with [the victim], it is my understanding that there have been at least two, if not more, people that have been convicted by pleas, two of them I believe before Your Honor in relation to sexual [sic] abusing her. I believe that is relevant on cross examination. [The prosecutor] in her *voir dire* of the jury was talking to them at great length about believing a child, how difficult it would be for them to talk about these things and things of that nature. I believe that fact, that issue of, you know, her knowledge of sexual activity . . . . would be relevant to that. I don't intend to go into any detail. All I would intend to ask her is if there were three other people that were convicted of that inappropriate sexual activity in relation to her.

TR at 715:8–716:7. After a prolonged discussion during which the prosecutor indicated her belief that it was against New York's rape shield law,[2] the trial court denied defense counsel's request. The

---

[1] The page numbers in this decision and order refer to the pagination generated for the entire State Court Record by the Court's CM/ECF database, rather than the page numbers for the transcript of each individual proceeding including in the record.
[2] The relevant section of the rape shield law allows the trial court discretion to hear "an offer of proof by the accused outside the hearing of the jury," and admit the evidence only if the court finds it "to be relevant and admissible in the interests of justice." N.Y. Crim. Proc. Law § 60.42.

3

trial court stated, "I'm not going to allow it into evidence . . . . This case with stand on its own merits without any implications or speculations." TR at 721:22–25. Defense counsel offered further explanation:

> [DEFENSE COUNSEL:] . . . the problem, Judge, [the case against Soto] doesn't stand on its own merits that way, because it allows for the jury not to hear and . . . . to be under the impression that this is the only instance and that her abilities to relate these things relates to this incident and nothing more. It severely restricts my ability to argue her credibility with respect to these allegations to the jury and a source of her ability to come in here and tell these things, because this isn't the first time that something like that supposedly has happened to her, and in the past there have been two individuals who have pled guilty to that.

TR 722:2–25. The trial court again denied defense counsel's request.

On direct appeal, Soto argued that the trial court "erroneously precluded evidence showing that despite her young age, the [victim] had the sophisticated sexual knowledge to make detailed false allegations of sexual abuse against Mr. Soto." AR at 63. Citing to multiple cases from the New York Court of Appeals and the United States Supreme Court, Soto maintained that the trial court's preclusion of evidence denied him of his constitutional right to a meaningful opportunity to present a complete defense against the prosecution's accusations. AR at 91 (citing, *inter alia*, *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *Crane v. Kentucky*, 476 U.S. 690 (1986); *People v. Carroll*, 740 N.E.2d 1084 (N.Y. 2000)). He also argued that, to the extent there was any material exculpatory information contained in the records that the trial court reviewed *in camera*, the trial court erred in not disclosing that information to the defense. AR at 109–10. The appellate court determined that Soto's two arguments in this regard were "without merit." *People v. Soto*, 141 A.D.3d 1088, 1089 (N.Y. Ct. App. 2016).

In the present habeas application, Soto maintains that the trial court violated his Sixth Amendment right to confront adverse witnesses. In support of his position, Soto argues that, to the extent that there was any material exculpatory information contained in the records that the trial court reviewed *in camera*, the trial court was required to disclose that information so that he could prepare

4

a proper cross examination of the victim. Pet. at 31–34. In addition, he argues that evidence of the other sexual assaults against the victim "was highly relevant to the trial's central issue – whether [the victim] had falsely accused petitioner of having sexual contact with her – and no legitimate purpose was to be served by excluding it." Pet. at 16. Soto argues that "[t]he exclusion of the evidence cannot be dismissed as harmless, as the proof of guilt was not overwhelming . . . . [and the prosecution]'s case rested largely on [the victim]'s testimony." Pet. at 18. After careful review of the record, the Court finds no violation of Soto's Sixth Amendment rights in this regard.

### Legal Principles

The Sixth Amendment to the Constitution guarantees the right of a defendant in a criminal trial "to be confronted with the witnesses against him." In addition to the right to physically face those who testify against him, the Supreme Court's "cases construing the [Confrontation] clause hold that [another] primary interest secured by it is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). Additionally, "the Due Process Clause requires the government to disclose favorable and material information to the defense [i.e., "*Brady* material"], including information that would impeach the testimony of government witnesses." *See United States v. Simpson*, 457 F. App'x 59, 62 (2d Cir. 2012) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

As the Second Circuit has explained, however, the criminal defendant's Sixth Amendment right to cross-examine adverse witnesses is not without limits:

> The right of cross-examination . . . is not absolute. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis omitted). A trial judge retains "wide latitude" to restrict cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)] . . . .

*Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012). Further, the Due Process Clause and the Sixth Amendment do not operate in tandem to create a right "to require the pretrial disclosure of any and

all information that might be useful in contradicting unfavorable testimony." *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987). Rather, "the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Ritchie*, 480 U.S. at 52 (emphasis in original; citations omitted).

"To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value." *Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011). "[T]he focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." *Van Arsdall*, 475 U.S. at 680. Accordingly, a defendant demonstrates a violation of the Confrontation Clause if he was denied the opportunity to "engag[e] in otherwise appropriate cross-examination designed . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Id.* (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

*Application*

In the present case, Soto has not demonstrated that the state trial court's decision to preclude defense counsel's introduction of evidence of other sexual offenses committed against the victim on separate occasions by other people "was contrary to, or involved an unreasonable application of, clearly established Federal law." The trial court's preclusion of the evidence of other sex offenses committed against the victim does not represent an unreasonable or arbitrary decision. *See, e.g., Grant v. Demskie*, 234 F.3d 1262, * 2 (2d Cir. 2000) (table) ("[w]hile petitioner has presented claims that, were we reviewing the trial court's decisions *de novo*, we might decide differently, petitioner has not demonstrated that the state trial court's actions involved an unreasonable application of law . . ."). As detailed above, the trial court heard extended argument from both sides about the merits of allowing the evidence, but ultimately decided to preclude the evidence so that the case would "stand on its own merits without any implications or speculations." TR at 715–724. That is, the trial court

concluded within its broad discretion, that it would preclude the evidence so as to avoid confusion of the issues.

Moreover, the record also reflects that, although defense counsel was precluded from cross-examining the victim about unrelated incidents in which she was sexually assaulted by other individuals, he was still able to cross-examine the victim on other aspects of her testimony that tested her credibility and reliability. *See Rhodes v. Lee*, No. 9:12-CV-01747-JKS, 2014 WL 1764509, at *4 (N.D.N.Y. May 1, 2014). Defense counsel thoroughly cross-examined the victim to test her account of the offenses she alleged against Soto, and in multiple instances was able to demonstrate inconsistencies in the victim's own account of the offense, inconsistencies between the victim's account and the accounts of other members of her household about the evening of the offense, and inconsistencies between the victim's account and the conduct of investigators on the scene.[3] As defense counsel recounted in his summation, there were inconsistencies in the testimony regarding the room and the bed in which the offense occurred (TR at 1212:10–1214:19), the timing of the offense (TR at 1210:15–1211:12), and the whereabouts of the several other members of the household who were in the house while the offense was taking place (TR at 1209:17–1210:14). Defense counsel also had the opportunity to point out such particular details as Soto's tongue ring, and the fact that he is not circumcised, that were unaccounted for in the victim's testimony. *See, e.g.,* TR at 1224. Consequently, the Court finds that the trial court did not deprive Soto of his constitutional rights when it precluded defense counsel from eliciting testimony from the victim on cross-examination regarding unrelated instances of sexual abuse committed against her by individuals other than the defendant.

---

[3] In particular, defense counsel on cross-examination elicited testimony from the victim that Soto sexually assaulted her in her sister's bed, but other witnesses testified that police investigators only collected materials from Soto's son's bed in an adjacent room, and did not examine the victim's sister's bed.

7

Further, Soto offers no factual basis that would lead this Court to suspect that the trial court, after review of the confidential records of the other sex offenses *in camera*, withheld records that were even relevant to Soto's defense, much less exculpatory. When a defendant's *Brady* claim "is speculative and implausible, a hearing to develop that claim further is not warranted." *United States v. McPartland*, No. 17-CR-587 (JMA), 2020 WL 7014275, at *14 (E.D.N.Y. Nov. 27, 2020) (citing *United States v. Avellino*, 136 F.3d 249, 260–61 (2d Cir. 1998)). *See also Bruno v. Connecticut Comm'r of Correction*, No. 04-CV-101, 2006 WL 2839232, at *8 (D. Conn. Sept. 29, 2006) ("Mere speculation that a government file may contain *Brady* material is not sufficient to require a remand for in camera inspection, much less reversal for a new trial."). Therefore, in accordance with Rule 8 of the Rules Governing Section 2254 Cases, after a review of the answer and the records of the state court proceedings, the Court finds that an evidentiary hearing – or further review of the confidential records that were reviewed *in camera* by the trial court – is not necessary. *See* 28 U.S.C. § 2254(e)(2).

<u>The Confrontation Clause and the Bench Conference with the Victim</u>

*Background*

At Soto's *Sandoval* hearing on July 16, 2010, the trial court directly addressed Soto in open court to explain Soto's right to attend bench conferences that take place outside of the hearing of the jury:

> THE COURT: From time to time, we are going to have bench conferences up here. You have a right to come up to all of those bench conferences and hear what the attorneys and myself are saying to each other.
>
> Sometimes these conferences are merely scheduling which witnesses come next. Things . . . like that . . . . But other times there will be some things very important to you and your case and you have a right to come up to any of my bench conferences. If you don't come up I will consider that a waiver by you of your right to come to the bench conferences. If you don't come to one conference, it doesn't mean you can't come to the next conference . . . . so you can change your mind any time that you wish.

8

Tr. at 42:14–43:7. When asked whether he understood the trial court's explanation of his rights, Soto answered that he did. *Id.* Additionally, at the outset of jury selection, the trial court asked defense counsel whether he had "instructed [his] client on bench conferences?" TR at 63:3–4. Defense counsel responded, "Yes. I discussed that with him." TR at 63:5–6.

During Soto's trial, defense counsel's cross-examination of the victim regarding a diagram of the room in which she was sexually assaulted led the trial court to call a bench conference:

> THE COURT: Could I see the attorneys up here for a moment and the witness too?
>
> (Whereupon there was a discussion held at the bench as follows with Court, Counsel, [and the victim, who was on the stand as a witness].)
>
> THE COURT: What is your problem?
>
> THE WITNESS: I can't do it. I can't.
>
> THE COURT: You have to tell the truth.
>
> THE WITNESS: That's what I'm doing . . . . I don't know what [defense counsel's questions] mean[] . . . .
>
> * * *
>
> [PROSECUTOR]: . . . [S]he's confused. She is clearly confused.
>
> THE COURT: If you're confused, you just tell him that you're confused.
>
> THE WITNESS: I'm confused.
>
> THE COURT: You could do it out loud on the record, okay, so everyone knows what's going on. We can't have this side conversation, because you're going to confuse the jury and confuse me.
>
> THE WITNESS: Okay.
>
> (Whereupon the proceeding resumed.)

Tr. at 662:4–663:10. The record does not contain any indication that Soto attended the bench conference alongside his attorney, or that he made an attempt to do so. Neither does the record indicate that he was in any way discouraged or prevented from attending the bench conference.

9

*Legal Principles*

It is well-settled that a criminal defendant has a federal constitutional right, under the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments, "'to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'" *Sanchez v. Duncan*, 282 F.3d 78, 81 (2d Cir. 2002) (quoting *Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir. 1998); *Faretta v. California*, 422 U.S. 806, 819–20 n. 15 (1975)). However, under federal law this right is not absolute[4]: "it arises only when the defendant's presence 'has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Diaz v. Herbert*, 317 F. Supp.2d 462, 473 (S.D.N.Y. 2004) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934)).

In any event, even if the right to be present at bench conferences were a cognizable federal constitutional claim, it is subject to waiver, as long as the waiver is knowing and voluntary. *Cohen v. Senkowski*, 290 F.3d 485, 491 (2d Cir.2002) (citations omitted). The waiver of the right to be present may be made by the defendant himself or by defense counsel, and may be inferred from a defendant's conduct, such as the failure to contemporaneously object. *Clark v. Poole*, 440 F. Supp.2d 235, 248 (W.D.N.Y. 2006) (collecting cases).

*Application*

In the present case, Soto's knowing and voluntary waiver of his right to be present can be inferred from his conduct and the circumstances of the case. Early in the pretrial proceedings, the trial court had instructed Soto on his right to attend bench conferences, and prior to jury selection had confirmed with defense counsel that counsel had also discussed Soto's rights with him. Neither Soto nor defense counsel objected to the trial court's recitation of Soto's rights or procedure that was

---

[4] Federal law and New York state law appear to differ in this respect. *See People v. Antommarchi*, 604 N.E.2d 95 (N.Y. 1992). *See also Diaz v. Herbert*, 317 F.Supp.2d 462, 473 (S.D.N.Y.2004) ("[E]ven if [petitioner's] rights under *Antommarchi* were violated, it does not rise to the level of a federal constitutional violation. Therefore, any alleged violation of these rights is not cognizable on habeas review.").

explained by the trial court at Soto's *Sandoval* hearing, and neither Soto nor defense counsel objected to the bench conference with the victim regarding her testimony. Moreover, defense counsel was present during the bench conference in question. Accordingly, the Court finds that Soto's failure to attend the bench conference held during the victim's cross-examination provides no basis for habeas relief.

The Trial Court's Questions During Defendant's Testimony

*Background*

At trial, Soto took the stand in his own defense. During the prosecution's cross-examination of Soto, the trial court interjected in two instances. In the first instance, the prosecutor had asked whether "prior to taking the stand to testify," Soto was able to watch the testimony of all of the other witnesses and review all the documents that witnesses prepared. TR at 1148:16–22. Soto responded that he had not had the opportunity, because the prosecution had failed to provide the grand jury minutes for one of the prosecution's witnesses, A.J., a minor that was also in the house with the victim on the evening of the offense:

> [PROSECUTOR:] Mr. Soto, I'm showing you what I just marked as People's Exhibit 15. At the top I'm referring to line one. It indicates [A.J.] called herein as a witness, having first been duly sworn, was examined, and testified as follows. Did you just see me get these out of your attorney's binder?
>
> [SOTO:] Yes.
>
> [PROSECUTOR:] Those are the grand jury minutes for [A.J.], correct?
>
> [SOTO:] You said prior. Not one minute before. Prior means before. I have been here two years.
>
> [PROSECUTOR:] Would you agree with me that the term prior means before?
>
> [SOTO:] Yes.
>
> [PROSECUTOR:] Okay.
>
> [SOTO:] But the way I see it, you did not give it to me in the discovery packet. I have been three times ready for trial.

11

> THE COURT: All right. Mr. Soto, I'm directing that you must answer the questions directly.
>
> [SOTO:] They are directly.
>
> THE COURT: And do you not remember that I stopped the trial and waited and took a recess for 15, 20 minutes, for half hour while you and your attorney sat at that table and went over these very same documents?
>
> [SOTO:] Yes.
>
> THE COURT: Now you're telling me one minute before?
>
> [SOTO:] It was like one minute before.
>
> THE COURT: You didn't take 20 minutes to go over that?
>
> [SOTO:] I didn't -- I didn't read it personally, to go through it or study it like she was trying to mention.
>
> THE COURT: Your attorney did not go through that with you?
>
> [SOTO:] Not all of it. I really didn't care for it.
>
> THE COURT: You didn't go through the whole thing?
>
> [DEFENSE COUNSEL:] I read through it, Judge, while we were sitting here at the table.
>
> THE COURT: And he was sitting there with you?
>
> [DEFENSE COUNSEL:] I was making notes. He was sitting next to me. I didn't give it to him. I didn't provide him with a copy.
>
> THE COURT: It was provided to you. You didn't even show it to him?
>
> [DEFENSE COUNSEL:] We were sitting here. It was between us. I was going through making notes. I was not keeping track of whether he was reading all of it or not, and I did not provide a copy of it to him.
>
> THE COURT: Okay. Thank you.

TR at 1149:19–1152:1.

In the second instance, the prosecutor was examining Soto regarding the children in the house that were his responsibility.

> [PROSECUTOR:] Now, you're not the father of any of Sonja's 7 kids, correct?

12

[SOTO:] No.

[PROSECUTOR:] The only children in that household you were responsible for were your two, correct?

[SOTO:] Well, I'm the only adult, so, yes, to all of them.

[PROSECUTOR:] You're the only adult that lives in the house?

[SOTO:] Well, at that time I said yes --

[PROSECUTOR:] I didn't ask you about any other time. I'm saying that the only two children that lived in the house on Trust Street that belonged to you were your children, correct?

[SOTO:] Yes.

[PROSECUTOR:] So the only children in the house you were responsible for were your children, correct?

[SOTO:] No.

[PROSECUTOR:] You were responsible for all the children in the house?

[SOTO:] If there was no other adult in there, yes.

[PROSECUTOR:] I'm not asking you about whether or not there was another adult in there.

[SOTO:] Are you talking about November 17th, at that time?

THE COURT: How old was Sonja?

[SOTO:] How old is Sonja? I don't know.

THE COURT: Is she an adult?

[SOTO:] Yes.

THE COURT: Did she live there?

[SOTO:] Yes.

THE COURT: Go on to your next question.

[PROSECUTOR:] Okay . . . .

13

TR 1153:16–1154:23. Defense counsel did not raise an objection during either of the Court's interjections into Soto's cross examination.

On direct appeal, Soto argued that the trial court prejudicially interjected itself in the prosecutor's cross-examination of Soto for the purpose of discrediting him. Citing a series of cases from the New York Court of Appeals and the New York appellate courts, Soto maintained that the trial court's interjections "could well have impacted the jury's assessment of [his] credibility," and "undermined the trial's overall fairness." AR at 102. The state appellate court found that Soto "failed to object when the court asked him questions during cross-examination, and he therefore failed to preserve for [appellate] review his contention that the court assumed the role or appearance of the prosecutor." *People v. Soto*, 141 A.D.3d 1088, 1089 (N.Y. Ct. App. 2016). Further, the appellate court stated that even had the issue been preserved for review, the trial court's questions to Soto during the prosecutor's cross-examination did not constitute an abuse of discretion. *Id.* Although he does not cite any federal law in the instant application, Soto is presumably arguing that the trial court's questions constituted a violation of his constitutional right to a fair trial. *See* Pet. at 22–23.

### Legal Principles

It is well-settled that "[t]he duty of a judge to see that a criminal trial is fairly conducted sometimes requires active participation on his part." *United States v. Reed*, 526 F.2d 740, 743 (2d Cir. 1975) (citing *United States v. Curcio*, 279 F.2d 681, 682 (2d Cir.), *cert. denied*, 364 U.S. 824 (1960)). He or she "assuredly is authorized to ask questions which may assist a jury in the evaluation of the nature of the" matter at issue, but must refrain from participation on one side or the other. *United States v. Lamont*, 565 F.2d 212, 220 (2d Cir. 1977) (citations omitted). The Second Circuit has "time and again cautioned that the judge should be careful to preserve an attitude of impartiality and guard against communicating to the jury any impression that the court is of the opinion that the defendant is guilty." *United States v. Natale*, 526 F.2d 1160, 1170 (2d Cir. 1975).

*Application*

At the outset, the Court notes that the state appellate court's determination that Soto's claim – i.e., that the trial court's questioning during cross-examination deprived him of a fair trial – was unpreserved for appellate review is an independent and adequate state ground that forecloses federal habeas relief on this issue. *See, e.g., Brunson v. Tracy*, 378 F. Supp.2d 100, 106 (E.D.N.Y. 2005) (citing *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)). Additionally, notwithstanding his claim that his attorney didn't object because he was "between a rock and a hard place" when it came to criticizing the trial court, Soto has failed to demonstrate adequate cause for the default, or a fundamental miscarriage of justice, either of which would allow this Court to reach his habeas claim despite the procedural default. *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Furthermore, even assuming that Soto's claim in this respect is not procedurally barred, it is plainly meritless. Soto contends that the trial court's "participation in the cross-examination was prejudicial error . . . ." Pet. at 22. It is clear from the record, however, that the trial court was doing no more than asking such questions as would serve the ends of justice by assisting the jury in understanding the testimony. *United States v. Cuevas*, 510 F.2d 848, 850 (2d Cir. 1975). The limited questioning by the trial judge was well within his active responsibility to assure that the issues of fact were clearly presented to the jury. *Natale*, 526 F.2d at 1170. The trial court's questioning never came close to "reach[ing] the point at which it appear[ed] clear to the jury that the court believe[d] the accused is guilty." *United States v. Robinson*, 635 F.2d 981, 984 (2d Cir. 1980).

<u>Prosecutorial Misconduct</u>

*Background*

Soto identifies multiple incidences of what he believes to be prosecutorial misconduct that occurred during the prosecutor's summation, including: the prosecutor's characterization of the defense strategy as one of distracting the jury from the real issues in the case, improper "bolstering"

15

of witness A.J.'s testimony by referring to the fact that she came "all the way from Maryland" to testify, and inflammatory rhetoric at the close of summation. With respect to the prosecutor's characterization of defense's strategy, Soto notes that the prosecutor began her summation by stating that defense counsel "got up here and said a lot of stuff to you. I submit that he is trying to distract you . . . ." TR at 1229:23–25. Later in the summation, referring to defense counsel's attempts to show inconsistencies in the testimony about where each of the members of the house was when the victim was abused, the prosecutor told the jury that defense counsel "want[ed] to distract you with what room [the other children were] in . . . ." TR at 1234:17–19. Again, the prosecutor pointed out "another thing that [defense counsel] would like you to be distracted from," namely, DNA consistent with Soto's in the victim's panties. TR at 1240:21–24. Lastly, the prosecutor referred to testimony about Soto's tongue rings as "all meant to distract you from the evidence that was presented in this case." TR at 1249:14–15. In concluding her summation, the prosecutor then implored the jury, "if you believe [the victim] when you get into that jury room, fight for her. Prove to the defendant that he can't outsmart you. Find him guilty." TR at 1255:21–25.

On direct appeal, Soto argued that the prosecutor's misconduct undermined the fairness of his trial. AR at 63. In particular, Soto argued that the prosecutor's comments about "distracting the jury" were disparaging, that she made remarks that were outside of the evidence's "four corners" to bolster her own witness's credibility, and that she finished her remarks with inflammatory rhetoric. AR at 105–07. Because defense counsel did not object to any of the prosecutor's comments in this regard, the state appellate court found that Soto "failed to preserve for our review his contention that he was denied a fair trial based on prosecutorial misconduct," and declined to exercise its power to review Soto's claim. *Soto*, 141 A.D.3d at 1089. Soto reiterates the arguments from his direct appeal in the instant petition.

*Legal Principles*

A defendant who, like Soto, "seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a 'heavy burden.'" *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (quoting *United States v. Feliciano*, 223 F.3d 102, 123 (2d Cir. 2000)). The defendant must show not simply that a particular summation comment was improper, but that the comment, "viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him . . . such that "the resulting conviction [was] a denial of due process . . . ." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir.2005) (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir.1999)).

The Second Circuit has stated that "we do not think it improper or excessive, without more, for a prosecutor to criticize defense arguments as merely being attempts to . . . 'focus on distractions.'" *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012). The circuit court has also made clear that "summations . . . are not detached exposition[s] . . . with every word carefully constructed . . . before the event." *Farhane*, 634 F.3d at 167 (internal quotation marks omitted) (second omission in original). Precisely because such arguments frequently require "improvisation," courts will "not lightly infer" that every remark is intended to carry "its most dangerous meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 646–47 (1974). "A prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992).

*Application*

As with Soto's argument regarding the questions asked by the trial court, the Court again notes here that the state appellate court's determination that Soto's claim of prosecutorial misconduct was unpreserved for appellate review is an independent and adequate state ground that forecloses federal habeas relief on this issue. *Brunson*, 378 F. Supp.2d at 106. Additionally, here, too, Soto has failed to demonstrate adequate cause for the default, or a fundamental miscarriage of

17

justice, either of which would allow this Court to reach his habeas claim despite the procedural default. *Aparicio*, 269 F.3d at 89–90.

Yet even assuming that Soto's claims in this regard were not procedurally barred, they are without merit. As detailed above, the prosecutor cautioned the jury four times that defense counsel was trying to distract them from the real issue, and once implored the jury to "fight for" the victim if they believed her story. That is a far cry from the sort of sustained attack on the integrity of defense counsel that the Second Circuit has held to be reversible error. *See, e.g., United States v. Friedman*, 909 F.2d 705, 708 (2d Cir. 1990) (reversing a conviction where, inter alia, the prosecution stated in summation that "some people [defense counsel] would have you pull down the wool over your eyes and forget all that, because while some people . . . go out and investigate drug dealers and prosecute drug dealers and try to see them brought to justice, there are others who defend them, try to get them off, perhaps even for high fees") (omission in original). *See also United States v. Millar*, 79 F.3d 338, 343–344 (2d Cir. 1996) (refusing to reverse a conviction where the prosecution stated in summation that the defense case was "hog wash" and a "smoke screen," and suggested that defense counsel was trying to "confuse" the members of the jury and "lead them astray"). Indeed, the remarks here amounted to nothing more than a legitimate "attempt to focus the jury's attention upon the evidence and away from defense counsel's claims." *Rivera*, 971 F.2d at 883.

Viewed in the context of the entire trial and summation, Soto's argument with respect to the prosecutor's remarks about A.J.'s travel from Maryland to testify is likewise without merit.

<u>Ineffective Assistance of Counsel</u>

*Background*

Lastly, Soto maintained on direct appeal that he was deprived of his constitutional right to counsel when defense counsel failed to challenge what Soto believes to be prosecutorial misconduct during the summation. The appellate court found that "[c]ontrary to [Soto]'s further contention, neither defense counsel's failure to object to the alleged instances of prosecutorial misconduct nor any of

18

defense counsel's other alleged shortcomings constituted ineffective assistance of counsel . . . . Rather, we conclude that the evidence, the law, and the circumstances of this case, viewed in totality and as of the time of the representation, establish that defendant received meaningful representation . . . ." Soto, 141 A.D.3d at 1089 (internal citations omitted). Soto reiterates the arguments he made on direct appeal in the instant habeas petition.

*Legal Principles*

The Sixth Amendment guarantees a criminal defendant the right to "reasonably effective assistance" of counsel. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland* at 687–88. A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

*Application*

In the present case, the Court need not consider whether Soto can demonstrate prejudice because, as stated above, the allegations of prosecutorial misconduct which serve as a predicate to Soto's ineffective assistance allegation are without merit. Additionally, the record shows that defense counsel was attentive to the prosecution's summation, as he objected to the prosecutor's reference to testimony that the trial court had previously excluded as hearsay, and elicited an instruction to the jury that "arguments and comments of counsel which you find are not supported by the evidence should receive no consideration from you and you should disregard these arguments." TR at 1244:21–1245:19. Yet whether or not defense counsel challenged the prosecutor's conduct during her summation, the summation was not sufficiently egregious to require a finding of misconduct as

a matter of law. Further, with respect to other facets of Soto's case, the record shows that his trial attorney vigorously contested the prosecution's case during both pretrial proceedings and the trial itself, and provided an able and engaged defense. Indeed, so effective was counsel's representation that the jury returned verdicts of not guilty on several other counts of sexual misconduct of which Soto was charged.

Consequently, Soto's claim of ineffective assistance of counsel is without merit.

CONCLUSION

Based on the foregoing, it is hereby ORDERED that Soto's application for habeas relief [ECF No. 1] is denied. Because Soto has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253. Further, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

Dated:     January 7, 2022
           Rochester, New York

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge